UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|   |   |   |
|---|---|---|
| MARIA LAFEVER | ) | |
| Plaintiff(s), | ) | |
| | ) | No. C10-01782 BZ |
| v. | ) | |
| | ) | |
| ACOSTA, INC., a Delaware Closed Corporation, also d/b/a ACOSTA TRUEDEMAND, LLC; and also d/b/a ACOSTA MILITARY SALES, LLC; and DOES 1 through 20, inclusive, | ) ) ) ) ) ) ) | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant(s). | ) | |

Plaintiff Maria Lafever has sued her former employer, defendant Acosta, Inc.,[1] for violating several disability discrimination provisions of the California Fair Employment and Housing Act (FEHA) and for wrongfully terminating her. Now before the Court is defendant's motion for summary judgment. Docket No. 80. Having considered the papers submitted by the parties and the arguments of counsel, **IT IS**

---

[1] Defendant is a sales, marketing, and services company for the food and consumer packaged goods industry.

1

1  **HEREBY ORDERED** that defendant's motion is **DENIED** for the
2  reasons explained below.[2]

3  **I.   BACKGROUND**[3]

4  Plaintiff began working for defendant in August 2007 as a
5  Business Manager Assistant.  This was an administrative
6  position that required her to complete most of her duties from
7  her desk.  Plaintiff, who had previously been diagnosed with
8  Lupus, did not experience any significant health problems
9  until March 2008.

10  Starting in March, plaintiff's Lupus symptoms returned
11  and she began to suffer from other medical conditions.  She
12  attempted to work while dealing with her health issues, but in
13  June she requested a leave of absence.  By this time,
14  plaintiff was experiencing exhaustion, shortness of breath,
15  headaches, numbness in her hands, ulcerations in her
16  fingertips, and weight and appetite loss.[4]

17  Even though plaintiff had worked for less than a year and
18  was not eligible for a leave of absence under the Family
19  Medical Leave Act (FMLA), defendant permitted her to take a
20  leave until September 21.[5]  While the parties dispute some of

---

[2]   The parties have consented to the Court's jurisdiction for all proceedings, including entry of final judgment under 28 U.S.C. § 636(c).

[3]   Unless noted otherwise, the facts discussed in this Order are not disputed.

[4]   Plaintiff was eventually diagnosed with the following medical conditions: (1) secondary pulmonary hypertension; (2) Mixed Connective Tissue Disorder; and (3) Raynaud's Syndrome.

[5]   Under defendant's employment policies, plaintiff was afforded one more week of leave in addition to the 12-week FMLA leave.

1   the details of their interactions during plaintiff's leave and
2   the severity of her medical conditions at that time, they
3   agree that plaintiff eventually exhausted her leave and that
4   defendant terminated her employment effective October 13.
5       Around December, plaintiff informed defendant that she
6   was feeling better and began asking about returning to work.
7   In February 2009, plaintiff sent defendant her release to
8   return to work form.  She also continued to reiterate her
9   interest in applying for any available positions.  Defendant,
10  however, never interviewed or rehired plaintiff.
11      On March 25, 2010, plaintiff sued defendant in Alameda
12  County Superior Court.  She alleged that defendant was liable
13  under FEHA for failing to provide a reasonable accommodation,
14  failing to engage in the interactive process, and disability
15  discrimination.  Plaintiff also alleged that she was
16  wrongfully terminated in violation of public policy.
17  Defendant removed the action to this Court and now moves for
18  summary judgment.

19  **II.   LEGAL STANDARD FOR SUMMARY JUDGMENT**

20      Summary judgment is appropriate only when there is no
21  genuine dispute of material fact, and the moving party is
22  entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.
23  The moving party bears both the initial burden of production
24  as well as the ultimate burden of persuasion to demonstrate
25  that no genuine dispute of material fact remains.  <u>Nissan Fire</u>
26  <u>& Marine Ins. Co., Ltd. v. Fritz Companies, Inc.</u>, 210 F.3d
27  1099, 1102 (9th Cir. 2000).  Once the moving party meets its
28  initial burden, the nonmoving party is required "to go beyond

3

the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations and citations omitted).  On summary judgment, courts are required to view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**III. ANALYSIS**

    A.   Reasonable Accommodation

For plaintiff to prevail on her failure to accommodate cause of action, she must establish that (1) she had a disability within the meaning of FEHA; (2) she was qualified to perform the essential functions of her position with or without accommodation; and (3) defendant failed to reasonably accommodate her disability. Scotch v. Art Institute of California-Orange County, Inc., 173 Cal.App.4th 986, 1009-1010 (2009).  For the purposes of this motion, defendant does not dispute that plaintiff suffered from a disability or medical condition within the meaning of FEHA.  Instead, defendant argues that plaintiff could not perform the essential functions of her job.  Even if she could, defendant contends that it reasonably accommodated her disability by providing her with the maximum amount of leave available under its

4

employment policies.

Defendant's arguments miss the mark. Viewing the evidence in a light most favorable to the plaintiff, a reasonable jury could conclude that defendant is liable for strictly enforcing its maximum leave of absence policy rather than providing plaintiff with a reasonable accommodation such as an extension of her leave. Under FEHA, a reasonable accommodation includes "[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position,...and other similar accommodations for individuals with disabilities." Cal. Gov. Code § 12926(n)(2). In <u>Hanson v. Lucky Stores, Inc.</u>, the Court held that FEHA's non-exhaustive list of reasonable accommodations includes finite leaves of absence, provided that the employee would likely be able to return to work at the end of the leave. 74 Cal.App.4th 214, 226 (1999); <u>see also</u> <u>Jensen v. Wells Fargo Bank</u>, 85 Cal.App.4th 245, 263 (2000)("Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future"); <u>Nunes v. Wal-Mart Stores, Inc.</u>, 164 F.3d 1243, 1247 (9th Cir. 1999)(holding that an unpaid medical leave may be a reasonable accommodation under the ADA). Thus, while defendant is not required to wait indefinitely for an employee's health problems to get better, <u>Hanson</u>, 74 Cal.App.4th at 226-27, it cannot enforce a maximum leave policy without first considering whether a reasonable

accommodation — such as an additional short-term leave — would be appropriate for certain employees after they exhaust their FMLA leave.  Defendant's Medical Leave Policy seems to recognize this:

> Associates who are not able to return to work once all eligible leave has been exhausted will be administratively terminated.  If an Associate has a qualified disability under the Americans' with Disabilities Act, a reasonable extension to the Maximum Leave of Absence Policy will be made.  When an Associate who has been administratively terminated is released to return to work, every effort will be made to find him/her a position for which they are qualified.

Gerwitz Deposition, Ex. 16 at 2.

Defendant's misplaced reliance on its maximum leave policy also raises an issue for trial regarding plaintiff's capacity to perform the essential functions of her job.  The analysis under this prong includes the consideration of whether plaintiff could perform her job with any reasonable accommodation.  See Nadaf-Rahrov v. Neiman Marcus Group, Inc., 166 Cal.App.4th 952, 962 (2008)(explaining that the second element of an employee's FEHA claim turns on whether plaintiff "could perform the essential functions of the relevant job *with or without accommodation*")(emphasis added).  Here, plaintiff has submitted evidence that she would have been able to return to work if she was afforded a reasonable accommodation such as a short-term leave.  At her deposition, plaintiff testified that before her leave was exhausted she notified her boss that she "was trying to come back to work, and that it would probably only be another month..."  Lafever Deposition at 81.  Defendant's human resources manager,

6

1  Deborah Karst, also had a conversation with plaintiff around
2  the time her leave was about to expire.  Karst Deposition at
3  31-32.  While Karst does not remember this conversation in
4  detail, her notes about the conversation contain the following
5  entry: "2 more mons - Per doctor."  Karst Deposition at 31;
6  Ex. 9.  Karst testified that she was never under the
7  impression that plaintiff needed an indefinite leave of
8  absence.  Id.  According to plaintiff, Karst instructed her
9  that she needed to extend her leave of absence if she was not
10 going to return after September 21.  Lafever Deposition at
11 102-03.  A reasonable jury could conclude from this evidence
12 that plaintiff would have been able to perform her job if
13 defendant would have provided her with the accommodation of a
14 reasonable extension of her leave.
15      Plaintiff also presented evidence that she may have been
16 able to return to her job if defendant accommodated her
17 request for a modified work schedule.  Plaintiff testified
18 that she asked Karst if it was possible for her to resume her
19 job part-time, but Karst denied her request because
20 plaintiff's boss already had one part-time employee working
21 for him.[6]  Lafever Deposition at 78.  This too raises a
22 genuine issue for trial about whether plaintiff could have
23 performed the essential functions of her job with a modified
24 work schedule accommodation and whether defendant is liable

---

[6] Plaintiff explained that her request for a part-time schedule only meant that she wanted to start work at 10:00 a.m. rather than at 8:00 a.m.  Lafever Deposition at 79.  Plaintiff admitted that she never conveyed these terms of the request to Karst.  Id. at 78.

for failing to provide such an accommodation.

Defendant points out that around the time that plaintiff's leave was about to expire she was still suffering from many of the symptoms that originally required her to take the leave. Lafever Deposition at 58-59. She testified that she could not use her hands or change her son's diaper, summing up that she "really couldn't do anything."[7] Id. Defendant also relies heavily in its motion on a certification form from her doctor that Plaintiff sent defendant which estimated she would be disabled and unable to perform work of any kind until March 2009.[8] Inciardi

---

[7] At another point of her deposition, plaintiff testified that she would have been capable of performing each of the essential functions of her job on September 20. Lafever Deposition at 85-91. Plaintiff was not clear whether she could perform these tasks with or without a part-time schedule accommodation, but this is a distinction without a difference since plaintiff's functional capacity is evaluated under both the "with" or "without" accommodation standards. See Nadaf-Rahrov, 166 Cal.App.4th at 962.

[8] Plaintiff explains that she only faxed this certification form to defendant after Karst denied her request to work part-time and instructed her to provide the form so that her leave of absence could be extended. Lafever Deposition at 102-03. This explanation helps show that contrary to defendant's argument, plaintiff's case is not analogous to Swonke v. Sprint, Inc. 327 F.Supp.2d 1128 (N.D. Cal. 2004). In Swonke, the Court rejected the employee's summary judgment argument that he was able to perform the essential duties of his job since he had previously submitted 21 doctor notes, over the course of two years, claiming that he could not return to work. Id. at 1133-34. One of the reasons Swonke held that the doctor notes were controlling was because there was no evidence on the record to support the employee's claim that he was capable of working during the contested time. Id. In this case, however, plaintiff has presented evidence that she could perform her job through her testimony that she needed a short extension of her leave and her specific request to work part-time. Plaintiff, who only submitted one note from her doctor, further explained that she only provided this note after her requested accommodation was denied and she was instructed to do so by defendant.

8

Declaration, Ex. C.  Whether this reliance is warranted is debatable since plaintiff contends, and defendant does not deny, that Toni Gerwitz, who terminated plaintiff, was unaware of the certification.  The letter itself gives the reason for termination as exceeding her "maximum leave entitlement."  Yet at the hearing, defendant argued that this "unambiguous" certification form, which was dated October 15 by the doctor but had an unexplained fax header dated September 23, confirmed that plaintiff could not return to work and defendant had no other choice but to rely on its contents and terminate plaintiff's employment.

The conflicting evidence only establishes that there is a genuine dispute about plaintiff's ability to work that is proper for a jury to determine.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(requiring courts to view the evidence on summary judgment in the light most favorable to the nonmoving party).[9]  This genuine dispute is highlighted by Karst's September 30 e-mail asking Gerwitz to "process" a "term letter" for plaintiff as she had exceeded "her maximum leave entitlement" and "confirmed to me that she could not return [to work]."  Gerwitz Deposition, Ex. 8.  Plaintiff, on the other hand, has denied Karst's version of their conversation and testified

---

[9]   The same is true with respect to defendant's position that plaintiff was unable to work because she was receiving state disability benefits when she was terminated.  This is evidence that the jury may consider in assessing plaintiff's medical condition, but it does not automatically bar plaintiff's FEHA claim.  See Prilliman v. United Air Lines, Inc., 53 Cal.App.4th 935, 963 (1997).

9

that she was able to return to work with a reasonable accommodation. If the jury accepts plaintiff's version of the evidence, it could find under California law that, rather than provide plaintiff with a reasonable accommodation, such as a short-term leave or a modified work schedule, defendant improperly terminated her instead.

### B. Interactive Process

Employers under FEHA must engage in a "timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations..." Cal. Gov. Code § 12940(n). While FEHA requires the employee to initiate the interactive process, "no magic words are necessary, and the obligation [to accommodate] arises once the employer becomes aware of the need to consider an accommodation." Scotch, 173 Cal.App.4th at 1014 (quoting Gelfo v. Lockheed Martin Corp., 140 Cal.App.4th 34, 62 (2006)). The duty to interact is continuous and an employer may be held liable for breakdowns in the process even when it initially took some steps to work with the employee. Nadaf-Rahrov, 166 Cal.App.4th at 985-86.

Defendant argues that it cannot be liable for failing to engage in the interactive process because any potential accommodation would have been futile since plaintiff could not perform the essential functions of her job. As explained earlier, there is a genuine issue for trial about whether plaintiff was a qualified individual under FEHA. Furthermore, defendant had a burden under the interactive process to consider reasonable accommodations and continually interact

1  with the employee in good faith.  A reasonable jury could
2  conclude that defendant, which was aware of plaintiff's
3  medical problems, should have worked with plaintiff around the
4  time her leave was expiring to determine whether any
5  reasonable accommodations would help her.  See Humphrey v.
6  Memorial Hospitals Ass'n., 239 F.3d 1128, 1137 (9th Cir.
7  2001)(holding that after the employee had requested an
8  accommodation that was rejected, the employer had an
9  affirmative duty to explore alternative methods of
10 accommodation before terminating the employee).  In a similar
11 manner, a jury could find that defendant, before deciding to
12 terminate plaintiff, should have followed up with plaintiff or
13 her doctor regarding her medical condition and the ambiguous
14 content of her doctor's certification form.  See Nadaf-Rahrov,
15 166 Cal.App.4th at 989 ("In some circumstances, an employer
16 may need to consult directly with the employee's physician to
17 determine the employee's medical restrictions and prognosis
18 for improvement or recovery")(citations omitted).
19         C.   Disability Discrimination
20         Under FEHA, plaintiff can establish a prima facie case
21 for disability discrimination by showing that (1) she suffers
22 from a disability; (2) she is otherwise qualified to do the
23 job; and (3) she was subjected to an adverse employment action
24 because of her disability.  Faust v. Calif. Portland Cement
25 Co., 150 Cal.App.4th 864, 886 (2007).  Defendant again argues
26 that plaintiff's claim fails as a matter of law because she
27 was not able to perform her job.  The Court has already ruled
28 that there is a genuine dispute for trial regarding this

issue.

Plaintiff claims she was subject to two separate adverse employment actions; defendant illegally terminated her in October 2008 and defendant failed to reinstate or rehire her in early 2009 when she was ready to return to work. Plaintiff has introduced evidence that she was replaced by a non-disabled person, and that non-disabled people, who appear to be less qualified than she was, were given the positions in which she was interested. Defendant has not shown that it is entitled to summary judgment on the third element of plaintiff's claim. See Jensen, 85 Cal.App.4th at 254 ("The court acknowledged that the plaintiff can establish the latter element for purposes of a wrongful discharge or adverse employment action claim by showing that he or she was subject to an adverse employment action and that he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees")(citations and internal quotations omitted).

      D.    Wrongful Termination Based on Public Policy

Defendant moves for summary judgment on plaintiff's wrongful termination cause of action solely on the grounds that the underlying FEHA causes of action, which constitute public policies, fail as a matter of law. Because this Court does not grant defendant's motion on plaintiff's FEHA causes of action, defendant's motion on this cause of action is also denied.

**IV.  CONCLUSION**

For the foregoing reasons, defendant's motion for summary

12

1 | judgment is **DENIED**.

2 | Dated: May 20, 2011

3 | _____
Bernard Zimmerman
United States Magistrate Judge