1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   MARIA LAFEVER                )
                                  )
12            Plaintiff(s),       )
                                  )        No. C10-01782 BZ
13        v.                      )
                                  )
14   ACOSTA, INC., a Delaware     )        **ORDER GRANTING ATTORNEYS'**
     Closed Corporation, also     )        **FEES AND COSTS**
15   d/b/a ACOSTA TRUEDEMAND,     )
     LLC; and also d/b/a ACOSTA   )
16   MILITARY SALES, LLC; and     )
     DOES 1 through 20,           )
17   inclusive,                   )
                                  )
18            Defendant(s).       )
     _____)
19

20        In this action, Plaintiff Maria Lafever ("Plaintiff")

21   sued her former employer, Defendant Acosta, Inc.

22   ("Defendant") for violating several disability discrimination

23   provisions of the California Fair Employment and Housing Act

24   ("FEHA") and for wrongfully terminating her.  The case

25   settled the Friday before trial, and as part of the

26   settlement, Defendant agreed that Plaintiff's attorneys' fees

27   would be determined by a motion for attorneys' fees.

28   Plaintiff now moves the court for an award of $973,680 in

                                  1

attorneys' fees.  Of this amount, $831,360.00 is attributable
to work performed by attorney William Adams and his
paralegal, Julie Lundgren, and $142,320.00 is attributable to
work performed by attorney Kirk Boyd.[1]

"An award of attorneys' fees incurred in a suit based on
state substantive law is generally governed by state law."
Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016,
1024 (9th Cir. 2003).  Under the FEHA, courts have discretion
to award reasonable attorneys' fees to "the prevailing party,
. . . except where the action is filed by a public agency or
a public official, acting in an official capacity."  Cal.
Gov. Code § 12965(b).  To determine whether a fee award under
the FEHA is appropriate, California courts look to federal
decisions addressing such awards under Title VII.  Chavez v.
City of L.A., 47 Cal. 4th 970, 985 (2010).

For the purposes of attorneys' fees, Plaintiff prevailed
in this action, and pursuant to the parties' settlement
agreement, Plaintiff is entitled to attorneys' fees.  The
parties' dispute is over the amount.

To determine reasonable attorneys' fees, the court must
first calculate the lodestar by taking the number of hours
reasonably expended by the litigation and multiplying it by a
reasonable hourly rate.  Fischer v. SJB-P.D. Inc., 214 F.3d
1115, 1119 (9th Cir. 2000) (citing Hensley v. Eckerhart, 461
U.S. 424, 433 (1983)).  A reasonable rate is typically based

---

[1]   Plaintiff originally sought an additional 50 hours
for work performed by Mr. Boyd's summer law clerks.  Plaintiff
has since eliminated those hours from her request. (See
Supplemental Declaration of Kirk Boyd, Docket No. 188, ¶ 6.)

upon the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience, and reputation." <u>Chalmers v. City of L.A.</u>, 796 F.2d 1205, 1210 (9th Cir. 1986); <u>Davis v. City of S.F.</u>, 976 F.2d 1536, 1545-46 (9th Cir. 1992); <u>see also</u> <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community."). To support a fee request, the prevailing party may submit expert witness testimony regarding attorneys' fees and declarations containing "verifiable information regarding rates allowed by courts." <u>Children's Hosp. & Med. Ctr. v. Bonta</u>, 97 Cal. App. 4th 740, 782-83 (2002).

**Reasonable Hourly Rate**

Defendant objects that the hourly rates of all of Plaintiff's counsel exceed the average rates of California litigators with similar experience.  To ascertain an attorneys' reasonable hourly rate, California courts consider "the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1133 (2001).  In "assessing a reasonable hourly rate, the trial court is allowed to consider the attorney's skill as reflected in the quality of the work, as well as the attorney's reputation and status." <u>MBNA America Bank, N.A. v. Gorman</u>, 147 Cal. App. 4th Supp. 1, 13 (2006) (citing <u>Ketchum</u>, 24 Cal.4th at 1139 (2001).

**William Adams**

Plaintiff requests $700.00 as a reasonable hourly rate for Mr. Adams.  I find that Mr. Adams' requested hourly rate warrants reduction because Plaintiff has failed to demonstrate it is in line with prevailing rates for general commercial or employment litigation in a case such as this, one that involves only moderate complexity.

In support of her fee request, Plaintiff submits the declaration of William M. Hensley, an attorney and contributor to a website devoted to summarizing state and federal decisions in California dealing with attorneys' fees and hourly rates.  Mr. Hensley opines that a $700 hourly rate for Mr. Adams is reasonable because even though it is on the "higher end" of hourly rates charged by attorneys in San Francisco law firms, it is commensurate with Mr. Adams' "high experience level."  (Declaration of William M. Hensley ("Henlsey Decl.") ¶ 17.)  Mr. Hensley relies almost exclusively on Mr. Adams' years in practice to justify his hourly rate.  While Mr. Henlsey provides a list of attorneys' hourly rates found to be reasonable by various courts in this district, along with those attorneys' years of experience, he does not indicate those attorneys' skills or reputation and therefore fails to directly compare Mr. Adams to counsel of similar skill, experience and reputation for whom a $700 hourly rate is reasonable.  Mr. Adams' declaration demonstrates that he has 36 years of experience litigating employment cases.  Although he describes his hourly rate of $700 as "reasonable" for an attorney of his experience, he

1   fails to provide evidence that he has ever been awarded that

2   rate or that any client has actually paid that rate.  See

3   Camarillo v. City of Maywood, Case No. 07-3469, 2011 U.S.

4   Dist. LEXIS 93695, at *7, 2011 WL 3665028 (C.D. Cal. Aug. 22,

5   2011) ("The actual rate that an attorney can command in the

6   market and customarily charges is itself highly relevant

7   proof of the prevailing community rate."); see also, Velez v.

8   Roche, Case No. 02-337, 2004 U.S. Dist. LEXIS 29848, at *25

9   (N.D. Cal. Sept. 22, 2004).  And while Mr. Hensley's

10  declaration provides a great deal of information on the range

11  of hourly rates charged by attorneys with varying years of

12  experience, those hourly rates provide no information on the

13  background or experience levels of the attorneys, and tend

14  only to demonstrate that an attorney's number of years in

15  practice does not necessarily correlate with the appropriate

16  hourly rate for that attorney.  (Hensley Decl. ¶ 20 (attorney

17  with thirty-three years of experience billed at $775 per

18  hour, while attorney with twenty-six years was $905.00 per

19  hour).)   After reviewing recent fee awards in this district

20  for attorneys with similar levels of experience as Mr. Adams,

21  I find that a $600.00 hourly rate is reasonable.[2]  See, e.g.,

22  _____

23       [2]  Moreover, when considering the appropriateness of
    counsel's requested hourly rate, a court may take into account:
24  (1) the novelty and complexity of the issues; (2) the special
    skill and experience of counsel; (3) the quality of
25  representation; and (4) the results obtained.  Campbell v.
    Nat'l Passenger R.R. Corp., 718 F. Supp. 2d 1093, 1098 (N.D.
26  Cal. 2010); Cabrales v. County of Los Angeles, 864 F.2d 1454,
    1464 (9th Cir. 1988), vacated on other grounds.  I am also
27  permitted to rely on my own knowledge of customary rates and my
    experience concerning reasonable and proper fees.  Ingram v.
28  Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011).  In considering
    each of these factors, I find that this matter did not involve

5

1   <u>Hamed v. Macy's W. Stores</u>, Case No. 10-2790, 2011 U.S. Dist.

2   LEXIS 125838, 2011 WL 5183856 (N.D. Cal. Oct. 31, 2011)

3   (awarding attorney with thirty-five years experience with

4   "extensive trial experience" and an "excellent reputation"

5   $565 per hour in contested FEHA action); <u>White v. Coblentz,</u>

6   <u>Patch, Duffy & Bass LLP Long Term Disability Ins. Plan</u>, Case

7   No. 10-1855, 2011 U.S. Dist. LEXIS 125657 (N.D. Cal. Oct. 31,

8   2011) (awarding attorney with thirty-one years of litigation

9   experience $600 per hour in contested ERISA action); <u>Muniz v.</u>

10  <u>UPS</u>, Case No. 09-1987, 2011 U.S. Dist. LEXIS 94364, 2011 WL

11  3740808 (N.D. Cal. Aug. 23, 2011) (awarding attorney with

12  forty years experience $445 per hour in contested FEHA

13  action); <u>Mitchel v. City of Santa Rosa</u>, Case No. 09-5004,

14  2010 U.S. Dist. LEXIS 80596, 2010 WL 2740069, at *2 (N.D.

15  Cal. July 12, 2010) (awarding $420.75 per hour for Bay Area

16  law firm partner with thirty-six years of experience in

17  defense-side employment law litigation); <u>Campbell v. Nat'l</u>

18  <u>Passenger R.R. Corp.</u>, 718 F.Supp.2d 1093 (N.D. Cal. 2010)

19  (finding support for "a market rate from $380 to $775 per

20  hour for experienced employment and civil rights attorneys in

21  the Northern District [of California]" for the years

22  2006-2009); <u>Freitag v. Cal. Dep't of Corr.</u>, Case No. 00-2278,

23  2008 U.S. Dist. LEXIS 119220 (N.D. Cal. Dec. 8, 2008)

24  (awarding $525 and $575 per hour for experienced civil rights

25  _____

26  novel or particularly complex issues and that Mr. Adams'
    performance throughout this litigation, discussed below, does

27  not merit the rate requested, particularly in light of my
    knowledge of the prevailing rates in the community for

28  similarly experienced litigators.  For this same reason, I find
    no reason to apply a multiplier.

1   attorneys).[3]

2   **Julie Lundgren**

3       I find that the rate of $175 per hour is reasonable for

4   Ms. Lundgren's paralegal time.[4]  Ms. Lundgren is a 1982

5   graduate of Boston University and is a certified paralegal

6   with over 25-years of experience.  While Plaintiff fails to

7   provide any detail about the types of cases Ms. Lundgren

8   typically handles and what law firms she previously worked

9   for, the going rate for paralegal work in this district is

10  approximately $150 per hour.  See, e.g., Mitchel, 2010 U.S.

11  Dist. LEXIS 80596, 2010 WL 2740069, at *2 (awarding $136.00

12  per hour for paralegal at Bay Area law firm who had ten years

13  of experience and a degree in paralegal studies); Campbell,

14  2010 U.S. Dist. LEXIS 20778, 2010 WL 625362, at *6-7

15  (awarding $160 per hour for paralegal services in 2006-2009);

16  Faigman v. AT&T Mobility LLC, Case No. 06-4622, 2011 U.S.

17  Dist. LEXIS 15825, 2011 WL 672648 (N.D. Cal. Feb. 15, 2011)

18  (awarding $150 for paralegal services); Muniz, 2011 U.S.

19  Dist. LEXIS 94364, at *29 (awarding $130 per hour for

20  certified paralegal).  Ms. Lundgren has significantly more

21  experience than the paralegals in the cases cited, and in

22  this case, she performed some work more akin to a junior

23  level associate.  I therefore find that a $175 hourly rate

24  _____

25  [3]    This rate also accounts for the fact that Mr. Adams'
        office is located in Pleasanton, where the overhead is lower
26      than in San Francisco.

27  [4]    There are inconsistencies in Plaintiff's motion
        regarding what rate Plaintiff seeks for Ms. Lundgren's time.
28      (Compare Declaration of William Adams ("Adams Decl.") ¶ 10,
        seeking $250 per hour, with ¶ 13, seeking $150 per hour.)

1    for her work is reasonable.

2    **Kirk Boyd**

3         Plaintiff requests $600.00 as a reasonable hourly rate

4    for Mr. Boyd.  In support of this fee award, Plaintiff

5    submits Mr. Boyd'a declaration which sets forth his

6    educational and professional background.  Mr. Boyd also

7    states that he is aware that other attorneys with his same

8    degree of education, training and skill have hourly rates of

9    $700 or higher.  (Declaration of Kirk Boyd ("Boyd Decl.") ¶

10   11.)  Like Mr. Adams, Mr. Boyd fails to provide the court

11   with any evidence of prior fee awards regarding his hourly

12   rate and fails to state that any client has paid him $600 per

13   hour.  Instead, Mr. Boyd submitted a declaration by Eric

14   Grover, a partner with the law firm of Keller Grover LLP,

15   located in San Francisco, who states that he spends

16   approximately 95% of his time representing plaintiffs in

17   employment matters and that he has a similar background to

18   Mr. Boyd (*e.g.*, both graduated law school within three years

19   of each other and were trained a large law firms before

20   forming their own firms).  Mr. Grover's declaration further

21   states that his present billing rate is $650 per hour and

22   that he was recently awarded fees based on that rate.

23        Mr. Boyd was brought into this case for the specific

24   purpose of assisting Mr. Adams with the trial.  Mr. Boyd's

25   billing entries begin on June 24, 2011, three days before the

26   pre-trial conference.  As noted during the hearing, I find it

27   reasonable that Mr. Adams brought in another attorney to

28   assist him with the anticipated trial in this case,

particularly given the fact that Defendant had at least two
(and possibly three) attorneys assisting it with its defense.
While it may not have been necessary for Mr. Adams to bring
in an attorney with Mr. Boyd's 25 years of experience, the
Ninth Circuit has cautioned district courts not to second-
guess staffing decisions.  Moreno v. City of Sacramento, 534
F.3d 1106, 1115 (9th Cir. Cal. 2008).  Nevertheless, I do not
think that Mr. Boyd's requested rate is reasonable.  I have
reviewed prior fee awards pertaining to Mr. Boyd in this
district, and in light of these fee awards and Mr. Boyd's
background, experience and the level of complexity of this
case, I find that a $575 hourly rate is reasonable.  Bobol v.
HP Pavilion Mgmt., Case No. 04-00082, 2006 U.S. Dist. LEXIS
21125, 2006 WL 927332 (N.D. Cal. Apr. 10, 2006) (awarding Mr.
Boyd $350 per hour for work performed between 2004-2006);
Hamed, 2011 U.S. Dist. LEXIS 125838 (awarding experienced
litigation attorney with 35 years of practice $565 per hour
in contested FEHA action).

**Reasonable Number of Hours**

The court has discretion to determine the number of
hours reasonably expended on this case.  Chalmers, 796 F.2d
at 1211; Hensley, 461 U.S. at 437 (noting that a district
court has discretion in determining the amount of a fee
award, which is "appropriate in view of the district court's
superior understanding of the litigation and the desirability
of avoiding frequent appellate review of what essentially are
factual matters").  The court may, in its discretion, reduce
hours "where documentation of the hours is inadequate; if the

case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." <u>Chalmers</u>, 796 F.2d at 1210.  When awarding attorney fees, the prevailing party may only be compensated for those hours of work that were "reasonably expended."  <u>See</u> <u>L.H. v. Schwarzenegger</u>, 645 F. Supp. 2d 888, 896 (E.D. Cal. 2009) (quoting <u>Hensley</u>, 461 U.S. at 433-34)).  The fee applicant bears the burden of "documenting the appropriate hours expended" in the litigation and therefore must "submit evidence supporting the hours worked."  <u>Hensley</u>, 461 U.S. at 433, 437.

Moreover, in cases where a voluminous fee application is filed, in exercising its billing judgment the district court "is not required to set forth an hour-by-hour analysis of the fee request." <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1399 (9th Cir. 1992) (citing <u>Jacobs v. Mancuso</u>, 825 F.2d 559, 562 (1st Cir. 1987)).  "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" <u>Id.</u> at 1399 (quoting <u>New York State Ass'n for Retarded Children v. Carey</u>, 711 F.2d 1136, 1146 (2d Cir. 1983)).  Having analyzed Plaintiff's counsels' records, I find that an across-the-board percentage reduction in hours is necessary.

To begin, it is worth reiterating that this was a fairly routine, single-plaintiff case under FEHA that did not proceed through trial.  The legal disputes were not novel;

1   nor were the policy implications of the lawsuit.  Thus, as I

2   stated at the hearing, given the circumstances, it is

3   somewhat troubling that the Plaintiff's fees in this case

4   have somehow reached the near million dollar mark.  Cf Hamed

5   v. Macy's W. Stores, Case No. 10-2790, 2011 U.S. Dist. LEXIS

6   125838 (N.D. Cal. Oct. 31, 2011) (awarding $463,401 in

7   attorneys fees in a contested FEHA action that proceeded

8   through trial).[5]  This is particularly true given that there

9   was little discovery motion practice, and only one round of

10  summary judgment briefing.[6]

11      After reviewing the time records submitted by Mr. Adams,

12  I find that an across the board reduction in the requested

13  hours is warranted in light of 1) the general level of

14  disorganization and inefficiency I witnessed throughout the

15  course of the litigation on the part of Mr. Adams; and 2) the

16  _____

17      [5]   The only remotely similar employment case involving a
    million dollar fee to which Plaintiff could point is Wysinger
18  v. Automobile Club of Southern California, 157 Cal. App. 4th
    413 (2007).  Wysinger affirmed a trial court award of
19  $978,791.00 in attorneys' fees after the plaintiff had obtained
    a jury verdict of $1.284 million, which the trial court
20  characterized as an excellent result, and for which it awarded
    a 1.1 multiplier.  Apart from being factually distinguishable
21  on many grounds, the issue in Wysinger was whether the trial
    court erred in not reducing the fee award because the plaintiff
22  had not prevailed on every claim.  The Court of Appeal affirmed
    without any discussion about the reasonableness of the award,
23  which does not otherwise appear to have been challenged.

24      [6]   Plaintiff makes much of the fact that Defendant
    failed to submit a separate statement of facts to accompany its
25  motion for summary judgment, arguing that this failure somehow
    resulted in the necessity of revising and resubmitting a new
26  opposition brief.  I find this argument unpersuasive,
    particularly in light of the fact that, as pointed out by
27  Defendant during the hearing, its moving papers were
    substantively unaltered when it re-filed its motion to
28  incorporate a separate statement, thereby not necessitating any
    substantive edits to Plaintiff's opposition.

excessiveness of some of Mr. Adams' billing entries.  With
respect to the first issue of inefficiency, Mr. Adams often
engaged in untimely filings and filed "corrected" versions of
various motions to account for this untimeliness.  (<u>See,
e.g.</u>, Docket Nos. 67, 164.)  There is also evidence in the
record that Mr. Adams was not diligent in responding to
defense counsel's telephone calls or telephone calls from the
court, and that Plaintiff's counsel failed to comply with
various court orders, which further supports my overall
impression of Mr. Adams' disorganization.  (<u>See</u> Docket Nos.
146, 147, 157.)

     Defendant also complains of the general level of
excessive time Plaintiff's counsel recorded for various
tasks, such as the nearly 200 hours that Plaintiff's counsel
spent opposing Defendant's summary judgment motion (in
addition to the 37 hours Plaintiff's counsel spent filing a
"corrected" opposition), and the nearly 343 hours spent on
legal and factual research.[7]  While Defendant offers no
authority or evidence to suggest that these hours are
excessive (for example, the Ninth Circuit has suggested that,
to demonstrate the excessiveness of hours requested, an
opposing party could present evidence of how long its
attorneys spent doing the same task, <u>Democratic Party of
Wash. v. Reed</u>, 388 F.3d 1281, 1287 (9th Cir. 2004)), I

---

[7]     The fact that Mr. Adams, who professes to be an
experienced FEHA attorney, spent this much time on legal
research in a case such as this, which did not involve any
novel or particularly complex issues, somewhat belies his
assertions that he should be paid an hourly rate of $700.

12

nevertheless find that Mr. Adams' time should be reduced
based on the general level of inefficiency that I witnessed
throughout the course of the litigation of this case- some of
which is demonstrated in the billing records themselves.
Stonebrae, L.P. v. Toll Bros., 2011 U.S. Dist. LEXIS 39832,
2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) (applying a 5%
reduction in hours billed due to inefficiency); see also
Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 (9th Cir.
2001) (across-the-board percentage reduction acceptable when
accompanied by "clear and concise explanation").  For
example, as I pointed out during the hearing, on February 25,
2011, Mr. Adams charged 2 hours preparing for a telephonic
discovery conference with the Court that lasted for a total
of 8 minutes, and did not involve any novel or complex legal
issues.  On March 3, 2011, Mr. Adams billed 2 hours for
"noticing" that no separate statement of facts was filed with
Defendant's motion for summary judgment, and "researching" my
standing orders on the need for a separate statement.

   More troubling, despite representing to the court that
he is an experienced litigator with many matters and clients,
Mr. Adams routinely billed numbers of hours to this single
case which strain credibility.  For example, on June 16,
2011, Mr. Adams billed 14.5 hours; on June 27, 2011, Mr.
Adams billed 20.3 hours; on July 1, 2011, Mr. Adams billed
15.8 hours; and on July 5, 2011, Mr. Adams billed exactly 24
hours to this case, only to turn around on July 6, 2011 and
bill another 21.4 hours.  These are just some examples of the
days in which Mr. Adams billed an alarming number of hours to

1  this case alone, which is especially troubling given that in

2  June and July, he had brought Mr. Boyd in to assist with the

3  matter, and that one of the reasons the Court was given when

4  it was difficult to reach him, or he was late in meeting a

5  deadline, was that he was a sole practitioner who had to deal

6  with other matters.  During the hearing, Mr. Adams could

7  provide no satisfactory explanation for such entries.

8         For these reasons, I find that Mr. Adams' time must be

9  reduced, and I exercise my discretion to reduce Mr. Adams'

10  hours by 40%, for a total of 659.30 hours.

11         With respect to Mr. Boyd, I also find that his hours are

12  subject to reduction.  Mr. Boyd's billing records are

13  organized in such a way that it is impossible to evaluate

14  them to exclude "hours that are excessive, redundant, or

15  otherwise unnecessary[.]"  Hensley, 461 U.S. at 437.  Mr.

16  Boyd engages in the practice of "block billing."  "Block

17  billing" refers to "the time-keeping method by which each

18  lawyer and legal assistant enters the total daily time spent

19  working on a case, rather than itemizing the time expended on

20  specific tasks."  Mendez v. County of San Bernardino, 540

21  F.3d 1109, 1129 n.2 (9th Cir. 2008) (quoting Welch, 480 F.3d

22  at 945 n.2).  Where courts are unable to properly analyze

23  billing records to determine whether there is excessive or

24  unnecessary billing — as with block billing — legitimate

25  grounds exist to reduce or eliminate claimed hours.  See

26  Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir.

27  2009).  This is so because it is "more difficult to determine

28  how much time was spent on particular activities."  Id.  In

circumstances like these, either line by line or across-the-board percentage cuts are within the discretion of the district court to reduce a fee award. <u>Welch</u>, 480 F.3d at 948-49 (reducing total billable hours by 20% across-the-board for billing in 15 minute intervals which the court found too imprecise to accurately reflect time expended and citing the California State Bar's Fee Report, which concluded that block billing may increase time by 10% to 30%); <u>Lahiri v. Universal Music & Video Distrib. Corp.</u>, 606 F.3d 1216, 1222-23 (9th Cir. 2010) (finding permissible district court's identification of attorneys and paralegals who were primarily responsible for block billing, and reducing 80% of their billable hours by 30%); <u>see also</u>, <u>Cal. Alliance of Child & Family Servs. v. Wagner</u>, Case No. 09-4398, 2011 U.S. Dist. LEXIS 76730, 2011 WL 2837423 (N.D. Cal. July 15, 2011) (reducing hours listed in block billed entries by 20%). Block billing is pervasive throughout Mr. Boyd's time records, and as a result, it is impossible to decipher how much time was spent on individual tasks and whether the time spent was reasonable.[8]  This is of special concern in this case because Mr. Boyd was brought into this case in order to

---

[8]    For example, in Mr. Boyd's time records, on 6/27/11, there is an entry for 11.40 hours for "Preparation of trial binder; preparation for and attend the pretrial conference with Judge; preparation of voir dire." (Docket No. 171 p. 10.) This entry is troubling for a variety of reasons.  First, Mr. Boyd fails to itemized how much of the 11.40 hours was designated to each task, which makes it impossible for the court to determine whether Mr. Boyd spent 5 hours or 30 minutes "preparing" a trial binder, which may be a clerical task. Second, the voir dire questions had already been prepared, and were distributed at the conference, which makes the reasonableness of this entry suspect.

assist with trial, and as pointed out during the hearing, his
time entries- particularly for June 2011- seem duplicative in
light of work already performed by Mr. Adams.  For example,
on June 25, 2011, Mr. Boyd bills time to "legal research
regarding disability discrimination."  This entry is not only
vague, but it is also generic and presumably covers legal
research already done by Mr. Adams.[9]  Likewise, on June 27,
2011, Mr. Boyd bills time to "legal research re reasonable
accommodation for jury instructions."  Yet the pretrial
conference in this case occurred on June 27, and it is my
practice to require the parties to submit proposed jury
instructions prior to the conference, which means that Mr.
Adams would have already researched the jury instructions
submitted by Plaintiff.[10]  Given this duplication of effort, I
exercise discretion to reduce the hours listed in Mr. Boyd's
billed entries by 20%.  Welch, 480 F.3d at 948; see also,
Miller ex rel. NLRB v. Hotel & Rest. Emples. & Bartenders
Union, Local 2, 107 F.R.D. 231, 245 (N.D. Cal. 1985)
(applying a 40% reduction to vague billing entries).  This
twenty percent reduction will account for any duplicative

---

[9]    When questioned about the possibility that some of
the legal research was duplicative, Mr. Boyd responded that in
an effort to be efficient, he had some law student clerks
perform some of the research, and they found some relevant case
law which neither he nor Mr. Adams had.  While Mr. Boyd made
much of his decision not to bill for the law students, see fn.1
supra, it is troubling that thousands of dollars were billed
for legal research by the highly experienced Messrs. Adams and
Boyd, which was better done by law students.

[10]    Additional time for researching jury instructions is
also billed on June 28, July 1, July 2, July 5, July 6, July 8,
and July 11.

16

entries, such as research conducted by both Mr. Adams and Mr. Boyd during the two month trial preparation period, and work performed by Mr. Boyd "reviewing" case pleadings and other documents in order to get up to speed on the case. Defenbaugh v. JBC & Assocs., Case No. 03-651, 2004 U.S. Dist. LEXIS 16256, 2004 WL 1874978, at *27 (N.D. Cal. Aug. 10, 2004) (reducing hours for time spent bringing attorney up-to-date on case developments as duplicative).

Thus, while the majority of hours billed by Mr. Boyd appear reasonable, the aforementioned issues make it unreasonable for the court to award the full amount requested.  Accordingly, the court applies an across-the-board reduction of twenty percent to the hours billed by Mr. Boyd and across-the-board reduction of forty percent to the hours billed by Mr. Adams.  The resulting award is $548,243.00 (659.28 hours x $600 per hour for worked performed by Mr. Adams; 248.8 hours x $175 per hour for worked performed by Ms. Lundgren; 189.80 hours x $575 per hour for work performed by Mr. Boyd), which represents attorneys' fees for the reasonable hours expended pursuing this litigation.

**Costs**

Plaintiff seeks costs in the amount of $18,815.16. These costs include messenger and service costs, filing fees, court reporter costs and transcript fees, witness fees, document retrieval fees, copy charges, and costs associated with the depositions of two witnesses whose depositions were taken by attorney Henry Josefsberg. (Adams Decl., ¶4, Ex. A.)

1   Plaintiff provided itemized billing statements which include

2   all of the aforementioned costs. (Id.)  I find these costs

3   reasonable and award them to Plaintiff.

4       Plaintiff also seeks $17,948.09 in costs for work

5   performed by Alvarado Smith for consulting and expert witness

6   services "to prepare declarations and perform other work in

7   support of the motion for an award of attorneys fees and

8   costs." (Pl.'s Reply Brief p. 5.)  It appears that the

9   majority of this sum is attributable to the declaration

10  submitted by William H. Hensley in support of Plaintiff's

11  request for fees.  The court found the declaration prepared

12  by Mr. Hensley to be of little use.  Mr. Hensley's

13  declaration does not cite to or rely upon the fee awards

14  referenced in this order and does not include any examples of

15  prior fee awards involving the attorneys in this case (such

16  as Mr. Boyd' prior fee award).  Mr. Hensley also relies a

17  great deal on a declaration submitted by another expert in a

18  different cases, incorporating it by reference.  The rest of

19  Alvarado Smith's fee is attributable to hours billed by an

20  unknown person identified as "MDA" who charged $450 per hour

21  to draft largely boilerplate objections to Defendant's expert

22  witness declaration.[11]  Given these deficiencies, I find it

23  unreasonable to award Plaintiff the $17,948.09 in additional

24  costs sought in her reply submissions.

25  ─────────────────

26       [11]   The parties also submitted a number of objections to
    each side's respective expert witness declarations.  These
    objections are overruled in their entirety, as most go to the
27  weight of the evidence, not to admissibility.  In any event,
    the court found the declarations of limited use and therefore
28  assigned little value to the statements made therein.

For the reasons stated above, **IT IS ORDERED** that Plaintiff is awarded $567,058.16 in fees and costs as follows:

| ATTORNEY/PARALEGAL | HOURLY RATE | HOURS | FEE AWARD |
|---|---|---|---|
| William Adams | $600 | 659.28 | $395,568.00 |
| Julie Lundgren | $175 | 248.80 | $43,540.00 |
| Kirk Boyd | $575 | 189.80 | $109,135.00 |
| **Total Fees** | | | $548,243.00 |
| **COSTS** | | | $18,815.16 |
| **TOTAL AWARD** | | | **$567,058.16** |

Dated: November 8, 2011

Bernard Zimmerman
United States Magistrate Judge